IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00112-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**BLAIR BRYANT,**

      **Defendant.**

---

**OBJECTIONS/CLARIFICATIONS TO
THE PRESENTENCE INVESTIGATION REPORT (PSIR) [DOC. 41]**

---

MR. BLAIR BRYANT, by and through his attorney, Assistant Federal Public Defender Timothy P. O'Hara, hereby submits the following objections/clarifications to the PSIR [Doc. 41].

### OBJECTIONS THAT IMPACT THE UNITED STATES SENTENCING COMMISSION GUIDELINE (USSG) RANGE

<u>Paragraph 25</u>: Undersigned counsel objects to the probation department's calculation that the base offense level under USSG §2D1.1 is 18. In fact, the correct base offense level is 12. The drugs that were possessed for personal use (i.e., the methamphetamine and crack cocaine) should not be considered as part of the base offense level calculation. *See United States v. Wilson*, 17 F.4th 994 (10th Cir. 2021).

*Factual Background*

In early 2021, Mr. Bryant lived at 133 W. 2nd Ave in Denver, Colorado. He lived there alone and had made an agreement with the owners of the property that he could stay rent-free if he agreed to help remodel the place. The entire house was in need of repair.

On the night of February 22, 2021, Mr. Richard Wingquist visited Mr. Bryant at the residence. Mr. Wingquist brought some supplies to make dimethyltryptamine (DMT), a hallucinogenic drug similar to psychedelic mushrooms or LSD that is made from the *mimosa tenuiflora* plant. That night and into the early morning hours of the next day, Mr. Bryant and Mr. Wingquist attempted to manufacture DMT. Mr. Bryant was aware that Mr. Wingquist intended to sell the DMT after it was made. *See* Doc. 36 at pp. 3-4. There was never any agreement between Mr. Wingquist and Mr. Bryant to manufacture, distribute, or possess with intent to distribute any other controlled substance.

Mr. Wingquist also brought other drugs to Mr. Bryant's house. Specifically, he brought crack cocaine and heroin; Mr. Bryant observed him smoking those drugs. These drugs were for the personal use of Mr. Wingquist. A small amount of Mr. Wingquist's personal use amount of crack cocaine remained in the home when the agents arrived.

Mr. Bryant possessed some methamphetamine at the house that night/early morning as well. He smoked some of it the night before his arrest and a small amount remained in his bedroom when he was arrested. When he spoke with law enforcement officers, Mr. Bryant admitted that he possessed this small quantity of methamphetamine, estimating that the amount remaining in his room was "not even an eight ball." *See* Doc. 41 at ¶16; *see also* https://www.merriam-webster.com/words-at-play/what-does-8-ball-mean (an "8 ball" is approximately an eighth of an ounce (ranging from 3 to 3.5 grams)). During the interview, Mr. Bryant also described putting some amount of the methamphetamine he possessed into a "bowl,"

an instrument used to smoke the drug. Mr. Bryant denies possessing 19.925 grams of methamphetamine.[1]

At around 6:00 a.m. on February 23, 2021, agents from Homeland Security Investigations (HSI) entered the home. They found Mr. Bryant and a noticeably under-the-influence Mr. Wingquist. Confirming his recent drug use, Mr. Wingquist was so high that his answers to questions were nearly unintelligible. During his post-arrest interview, Mr. Bryant admitted to the agents that Mr. Wingquist was smoking crack and heroin the night before and that Mr. Wingquist may have left some of his drugs inside of the residence.

*Argument*

In this case, Mr. Bryant and Mr. Wingquist manufactured DMT and possessed the substance with the intent to sell it. Neither Mr. Bryant nor Mr. Wingquist were charged with the possession of methamphetamine or crack cocaine, *let alone with the manufacture or distribution of those substances*. The personal use amounts of cocaine and methamphetamine should not be included in Mr. Bryant's base offense level calculation for this DMT-based offense. As Mr. Bryant told law enforcement at the time of his arrest, the cocaine belonged to Mr. Wingquist and was for Mr. Wingquist's personal use. Mr. Bryant's small amount of methamphetamine was possessed exclusively for his own personal use. There is no evidence to suggest that these drugs were part of the manufacture/distribution/possession with intent to distribute DMT. Therefore,

---

[1] A lab report disclosed by the government in discovery describes a "liquid" with a net weight of 19.925 grams that tested positive for the presence of methamphetamine. A majority of the substance (about 67%) was consumed in order to determine that the substance even contained the presence of methamphetamine. No purity was obtained. Mr. Bryant denies knowledge and possession of a liquid substance that contained methamphetamine inside the residence.

based on the amount of DMT found inside of Mr. Bryant's residence, 95.789 grams,[2] a base offense level of 12 should apply.  *See* USSG §2D1.1(c)(14).

However, the probation department included the cocaine base ("crack") and methamphetamine in the calculation.  *See* Doc. 41 at ¶¶18, 25.  Other than being found in the same residence, there is no connection between the personal-use amount narcotics and the present offense. By adding those drugs to the guideline calculation, the base offense level increased by *six levels,* to 18, and the guideline range doubles.  *See id.* at ¶82 (guideline range of 30-37; compared to guideline range of 15-21 months for base offense level 12).

The Tenth Circuit recently addressed this issue in *United States v. Wilson*, 17 F.4th 994 (10th Cir. 2021), finding unequivocally that unless there is a "sufficient connection between the personal-use quantity and the distribution offense of conviction," personal-use amount narcotics will not constitute relevant conduct under the guidelines and therefore not be considered toward the calculation of the base offense level.  17 F. 4th at 1002.  Bringing the Tenth Circuit in line with every circuit but one, the Court indicated that, if proven, the defendant's personal-use quantities "would not constitute relevant conduct for his distribution offenses."  *Id.* As long as the defendant meets the initial burden of providing evidence of the intent to consume, then the government bears the ultimate burden of proving the amount of drugs involved in the offense.

---

[2] As will be explained in the Motion for Variant Sentence, the form of the DMT found inside of the house produced a weight much higher than the amount that would eventually be used/sold.  DMT is typically consumed by smoking the drug in a crystalized form.  Yet when it was recovered by law enforcement, the substance was still in liquid form, not yet having crystallized into DMT.  The weight of the liquid contained a majority of non-DMT substances, including naptha, a solvent.  Had more time passed with the container in the freezer, crystals would have materialized into an amount of DMT that would have been a fraction of 95 grams and the remainder of the substance would not have contained DMT.  In the interview with police, Mr. Bryant estimated that their foray into DMT production would have netted "a couple of grams."

*See id.* at 1005.  In announcing this new rule, the Court remanded the matter for resentencing. *See id.* at 1006.

Here, there is plenty of evidence that the personal-use narcotics were not connected with the DMT manufacture/distribution as required by *Wilson* and USSG §1B1.3(a).  First, as it relates to the crack cocaine, Mr. Bryant did not possess the substance; Mr. Winquist did.  The amount was miniscule, 1.24 grams, in itself consistent with personal use. At the time of arrest, Mr. Bryant told law enforcement that he observed Mr. Wingquist using crack the night before. Furthermore, since the substance was not within the scope of the jointly undertaken criminal activity, in furtherance of the criminal activity, or reasonably foreseeable in connection with that criminal activity, i.e., not connected to the offense conduct as required by *Wilson,* this substance should not count toward the guideline calculation.  *See* USSG §1B1.3(a)(1)(B).

Similarly, Mr. Bryant's use and possession of a small amount of methamphetamine (less than three grams) also should not count toward the base offense level. He indicated to law enforcement at the time of arrest where it would be and that some of it would be found *inside of a pipe*.  There is no better indication of one's intent to consume drugs than by putting the drugs inside of a pipe.  Furthermore, the exact amount of methamphetamine attributable to Mr. Bryant cannot even be determined as the amount he possessed was nowhere near 19.925 grams.

Since neither the methamphetamine nor the crack cocaine were connected to the present offense, these amounts should not be attributed to the base offense level. The probation department has presented no evidence to suggest that the other drug amounts were for distribution or that they were connected in some way to the present offense other than their

presence in the house.  As a result, the objection should be sustained and the base offense level should be 12.

Paragraph 27: Mr. Bryant meets the criteria for an adjustment under the guidelines for safety-valve following the passage of the First Step Act.  *See* 18 U.S.C. §3553(f).  He has no more than four criminal history points, did not use violence or threats of violence or possess a firearm/dangerous weapon in connection with the offense, no death/serious bodily injury resulted, was not a leader/organizer, and provided the government with evidence of the offense.  As a result, the Court should include the 2-level decrease.

The only reason that the probation department did not account for the two-level reduction that is recommended by law is because the guidelines have not specifically been amended to reflect the statutory version.  *See* Doc. 41 at ¶27.  But since USSG §5C1.2 directly references the safety valve *statute* ("if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) . . ."), then the Court can easily find that USSG §2D1.1(b)(18) applies in the present case.  The two-level safety-valve reduction should apply.

Paragraph 35, 82: Based on the above objections, the correct guideline range should be:

*Total Offense Level*: 12 (§2D1.1(c)(14)) + 2 (§2D1.1(b)(12)) – 2 (§3E1.1) - 2 (3D1.2(a)) = 10;

*Criminal History Category*: III (4 points)

*Guideline range*: 10-16 months

**OBJECTIONS/CLARIFICATIONS THAT DO NOT IMPACT THE USSG RANGE BUT THAT MAY BEAR ON SENTENCING**

Paragraph 69: According to records from the University of Wyoming, Mr. Bryant attended the school between 2000-02.

<u>Paragraph 76</u>: The amount on the Bluebird American Express Card is now approximately $7200 and the amount in the Personal Savings Account is approximately $7400.

WHEREFORE, undersigned counsel requests that the Court consider the aforementioned objections/clarifications in advance of the Sentencing Hearing.

<div style="margin-left: 50%;">

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/*Timothy P. O'Hara*
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Email:  Timothy_OHara@fd.org
Attorney for Defendant

</div>

CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, I electronically filed the foregoing

**OBJECTIONS/CLARIFICATIONS TO**
**THE PRESENTENCE INVESTIGATION REPORT (PSIR) [DOC. 41]**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

    Andrea Surratt
    Assistant U.S. Attorney
    Email:  Andrea.Surratt@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Mr. Blair Bryant (U.S. Mail)

    s/*Timothy P. O'Hara*
    TIMOTHY P. O'HARA
    Assistant Federal Public Defender
    633 Seventeenth Street, Suite 1000
    Denver, Colorado  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Email:  Timothy_OHara@fd.org
    Attorney for Defendant