IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-112-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. BLAIR BRYANT,

    Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

---

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following response to the defendant's objections to the presentence investigation report ("PSR") [ECF #44].

    <u>Paragraph 25</u>.  As part of the Guidelines calculation pursuant to U.S.S.G. § 2D1.1, the PSR includes as relevant conduct 19.925 grams of methamphetamine (39.95 kg of converted drug weight) and 1.14 grams of cocaine base (4.43 kg of converted drug weight) in the defendant's base offense level. [ECF #41 ¶ 25].  The defendant argues that he had a small amount of methamphetamine and cocaine for personal use and those drugs should not be included in the Guidelines calculation. The defendant denies possessing the 19.925 grams of methamphetamine located in his home. [ECF #44].

    As an initial matter, the defendant's refusal to take responsibility for the 19.925 grams of methamphetamine located in his home is surprising.  The beaker containing

the liquid methamphetamine was located upstairs in the house, where only the defendant lived. [Ex. A (the methamphetamine is listed as "Exhibit 5" on page 8), Ex. B (lab report for Exhibit 5)]. As seen in the photos below, the methamphetamine was on a table with other items, and it did not appear to have been placed there temporarily, as by a visitor or intruder:



Glass beaker of methamphetamine located among other belongings in BRYANT's home



Glass beaker of methamphetamine identified as "Item 5" to be sent for testing

At the time of the search, the defendant implicated another individual only in the manufacture of DMT—not methamphetamine. That the defendant possessed the methamphetamine, that was found in the home where he lived, among an astounding array of other drugs and drug-manufacturing paraphernalia, should not be in serious dispute.

It also cannot be in serious dispute that the defendant intended to distribute this methamphetamine. As noted in a report prepared by Supervisory Inspector Joseph Hartley (attached as Exhibit C), the amount of methamphetamine located in the defendant's home was above personal use amount. It seems unlikely that the defendant kept a beaker of nearly 20 grams of methamphetamine in his home to slowly

siphon off small amounts of the liquid for personal use. Rather, it is much more likely that this methamphetamine—like the array of other drugs and chemicals in the home—was in the process of being manufactured for sale or distribution. In fact, as noted by Supervisory Investigator Hartley, it is generally the case that when methamphetamine is in liquid form, it is because it has not yet been manufactured into solid form. Individuals typically do not use methamphetamine in liquid form. Given that the defendant's home was a drug lab before all else, it is reasonable to conclude that law enforcement searched the defendant's home before he was able to finish the manufacturing process of this methamphetamine. This is further bolstered by Supervisory Inspector Hartley's estimate that the value of this methamphetamine would be over $1,000. Given the defendant's living conditions and lifestyle, it seems much more likely that he was going to sell the drugs rather than to ration the methamphetamine for his own use over a period of months.

Finally, although the defendant correctly notes that personal-use quantities of drugs are typically not added to the base offense level for a drug distribution offense, the defendant here pled guilty, in Court Four, to a violation of 21 U.S.C. § 856(a)(1), maintaining a premises for the purpose of manufacturing, distributing, and using DMT. The case cited by the defendant, *United States v. Wilson*, 17 F.4th 994 (10th Cir. 2021) confined its analysis to defendants convicted of "simple distribution" of a controlled substance. *Id.* at 1001. *Wilson* is therefore inapplicable.

Moreover, here, the defendant: (1) possessed a quantity of methamphetamine exceeding personal use quantities, and (2) possessed methamphetamine in a form (liquid) that is indicative of manufacturing activity occurring at the defendant's home.

*Wilson* is therefore also distinguishable both because it is not reasonable to conclude that the 19.925 grams of methamphetamine was for personal use and because it is reasonable to conclude that the defendant was manufacturing the methamphetamine— not simply possessing it for use.

The Government does not argue that the methamphetamine located in a pipe should be included in defendant's offense level.  The Government also will not argue that the cocaine base should be included in the offense level.[1]  Accordingly, the Government's calculation under U.S.S.G. § 2D1.1 is as follows:

| Drug name | Drug Quantity | Converted drug weight |
|---|---|---|
| DMT | 95.7892 grams | 9.58 kg |
| Methamphetamine | 19.925 grams | 39.85 kg |
| **Total** | | **49.43 kg** |

Paragraph 27.  The Government agrees that the Court should afford the defendant safety-valve credit under the First Step Act, as a two-level downward variance.

---

[1] Because the defendant pled guilty to maintaining a drug-involved premises for, among other things, *using* DMT, it is arguable that the personal-use quantities of methamphetamine and cocaine base could, in fact, be included here as relevant conduct.  The court need not resolve this, however, since the inclusion of those small amount of drugs will not affect the base offense level.

Respectfully submitted this 7th day of July, 2022.

                          COLE FINEGAN
                          United States Attorney

By:    *s/ Andrea Surratt*
        Andrea Surratt
        Assistant United States Attorney
        U.S. Attorney's Office
        1801 California St., Suite 1600
        Denver, CO 80202
        Telephone: (303) 454-0100
        e-mail: Andrea.Surratt@usdoj.gov