IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00112-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

**BLAIR BRYANT,**

**Defendant.**

---

**REPLY TO "GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT" [DOC. 45]**

---

Defendant, Blair Bryant, by and through counsel, Timothy P. O'Hara, Assistant Federal Public Defender, hereby replies to the "Government's Response to Defendant's Objections to Presentence Investigation Report" [Doc. 45].

A) Lack of Possession

The government has failed to provide sufficient evidence that Mr. Bryant possessed the murky, brown substance that tested positive for the presence of methamphetamine. In its Response, the government concluded that since the substance was found in Mr. Bryant's residence, it must have been his. *See* Doc. 45 at p. 2 ("That the defendant possessed the methamphetamine, that was found in the home where he lived, among an astounding array of other drugs and drug-manufacturing paraphernalia, should not be in serious dispute.") While that argument may carry some weight if Mr. Bryant were alone in the house, the government failed to address the fact that there was another individual in the residence at the time the police executed the search warrant. That individual, Mr. Richard Wingquist, not only was using drugs

the night before and into the morning, but he was working with Mr. Bryant to manufacture DMT, and he was the one that was going to be distributing it. Furthermore, as a general premise, every single object in Mr. Bryant's house should not be attributed to him without additional evidence to support his possession, such as knowledge of its existence. Notably, Mr. Bryant made no admissions to possessing liquid methamphetamine during any of his multiple interviews in connection with the present case and the government did not charge Mr. Bryant with possessing, possessing with the intent to distribute, or manufacturing the substance.

B) Not a Distribution Amount/Insufficient Evidence of Manufacturing

1) Evidence Does Not Support Distribution

Even if the Court were to find that Mr. Bryant was in possession of the murky, brown liquid, the Court still must determine whether the substance was for personal use or distribution. In its Response, the government conceded that personal-use quantities of drugs are "not typically added to the base offense level for a drug distribution offense." Doc. 45 at p. 3. Therefore, the parties agree that the substance should only be attributed to the guideline range if it was consistent with distribution.

The government relied on the amount of methamphetamine as supporting a conclusion that the murky, brown substance was for distribution. *Id.* The government's argument rested its argument on an opinion by Supervisory Investigator Joseph Hartley[1] that "[a] total of 19.925g net weight positive methamphetamine was recovered as a result of a search warrant on BRYANT's residence." *Id.* - Attachment C at p. 1. Mr. Hartley elaborated that the "substantial

[1] Mr. Hartley's formal education consists of a bachelor's degree in Criminal Justice from Metropolitan State University in 2003 and a Master of Science in Justice Administration from the University of the Cumberlands in April of 2022. The large remainder of his training has been through law enforcement agencies, not scientific/academic institutions.

amounts of liquid methamphetamine" were not for personal use and the value of the methamphetamine was approximately $1,195.00. *Id.* But Mr. Hartley delivered those opinions without all of the information in the case, and his conclusions were based on the false (and questionable) premise that the liquid was pure methamphetamine.

On July 15, 2022, eight days after Mr. Hartley delivered his opinion and at undersigned counsel's request, the parties received additional information from the Drug Enforcement Agency's (DEA) chemistry lab about the sample in question, specifically a document entitled Case Details Report (CDR).[2] *See* Attachment A. In the CDR, the chemist from the DEA lab, Gustavo Avila, outlined his observations of the "brown liquid" substance that he tested in June of 2021. Of note, he observed that there was "[l]ow level methamphetamine in sample – **below 1% in sample matrix** . . ." *See id.* at p. 1 (emphasis added).

Undersigned counsel then sent the CDR and other DEA case materials about the liquid to Ms. Heather Harris, a forensic chemist and Assistant Professor in the Forensic Science Department of Arcadia University located in Glenside, Pennsylvania.[3] *See* Attachment B – CV of Ms. Harris. Mr. Harris reviewed the relevant documents from the DEA, including the CDR, as well as Mr. Hartley's opinions. According to Ms. Harris, the government's conclusion that the substance tested by the DEA is methamphetamine weighing 19.925 grams "does not accurately characterize the evidence." *See* Attachment C – Opinion of Ms. Harris.

---

[2] Based on the timing of the CDR's disclosure, Mr. Hartley did not have this report when his opinions were made on July 7, 2022.

[3] In contrast with Mr. Hartley, Ms. Harris has been a forensic chemist for the better part of the last two decades. She received a Bachelor of Arts in General Studies from the University of North Texas, where she specialized in Anthropology, Biology, and Chemistry. From there she received a Masters of Forensic Science from the George Washington University with areas of concentration in Chemistry and Toxicology. *See* Attachment B.

First, based on the density of the liquid - determined to be 1.0004 grams/milliliter, the substance in question is largely made up of water, not methamphetamine. *See id.* ("Water is responsible for the majority of the weight reported here.") And the amount of liquid is not much to begin with – about "5% of a typical can of soda that contains 355 milliliters."

But the most important conclusion of Ms. Harris's is that, based on the small amount of methamphetamine in the sample as determined by the government's own DEA chemist, i.e. less than 1% of the liquid, the maximum weight of the methamphetamine inside of the liquid would be approximately 0.199 grams, or one fifth of a gram.[4] *See id.* Such a small amount of methamphetamine, if by some miracle, it were converted to crystal/solid methamphetamine by some unknown process, it would be much more consistent with personal consumption rather than distribution.

2) Manufacture

The evidence also is insufficient to demonstrate that the murky, brown liquid was in the process of manufacturing methamphetamine as opined by the government. The government has provided no evidence to suggest that any of the ingredients of methamphetamine manufacturing were present in the liquid at the time it was discovered. Its mere appearance does the government no favors.

In fact, the evidence points in the other direction. Based on the weight of the substance, Ms. Harris opined that the liquid is primarily made up of water. *See* Attachment C. According to the United States Department of Justice's own website, water is not even on the list of primary ingredients used in the process of making meth. *See*

[4] Mr. Avila tested approximately 20 grams of the brown, murky liquid. No conclusions can be made about the contents of the liquid that remains untested.

https://www.justice.gov/archive/olp/methawareness/ (last visited July 18, 2022) ("The ingredients that are used in the process of making meth can include: ether, paint thinner, Freon®, acetone, anhydrous ammonia, iodine crystals, red phosphorus, drain cleaner, battery acid, and lithium (taken from inside batteries").

There are a number of reasonable, alternative explanations for why a murky, brown substance could contain trace amounts of methamphetamine that do not involve the manufacture of methamphetamine. Perhaps the liquid is from a water rinse of a pipe or other instrument used by someone to smoke methamphetamine. Or perhaps there was a small amount of methamphetamine in the flask prior to someone dumping a dirty, water-based liquid into it. Or, if an instrument like a water bong were used to consume methamphetamine, the liquid that remained would contain a majority of water with traces of methamphetamine inside. Any of these possible explanations are more reasonable than the government's conclusion that the liquid is the product of manufacturing.

C) Conclusion

The Court should rely on the conclusions of Mr. Harris, a forensic scientist who considered all of the relevant evidence, over the conclusions of Mr. Hartley, a law enforcement investigator who based his opinions on incorrect assumptions and formed conclusions without having all of the relevant information. Because of the lack of evidence of possession, possession for distribution, and manufacturing, there is insufficient evidence to support the inclusion of the liquid in Mr. Bryant's guideline calculation – i.e. the government's evidence is "murky," at best.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ *Timothy P. O'Hara*
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: timothy_ohara@fd.org
Attorney for Defendant

*I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.*

CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2022, I electronically filed the foregoing

**REPLY TO "GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT" [DOC. 45]**

with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Andrea Lee Surratt, Assistant United States Attorney
Email: andrea.surratt@usdoj.gov

. . . and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Blair Bryant (via U.S. mail)

s/ *Timothy P. O'Hara*
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: timothy_ohara@fd.org
Attorney for Defendant